Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:   516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAL CARBONE,<br><br>                    Plaintiff,<br><br>vs.<br><br>BSQUARE CORPORATION, ROBERT CHAMBERLAIN, MARY JESSE, RYAN VARDEMAN, RALPH C. DERRICKSON, BERNEE D.L. STROM, and RICHARD A. KARP,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Sal Carbone ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against BSqaure Corporation ("BSquare" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of

1

Defendants' efforts to sell the Company to Kontron America, Incorporated ("Parent"), through its subsidiary Kontron Merger Sub., Inc. ("Merger Sub", collectively with Parent "Kontron"), as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an October 11, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, in exchange for each share of BSquare common stock owned, BSquare shareholders will receive $1.90 per share, indicating an aggregate transaction value of approximately $38 million.

3. Thereafter, on October 24, 2023, BSquare filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their BSquare shares in favor of the Proposed Transaction. The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for BSquare, provided by BSquare to the Company's financial advisor Telegraph Hill Advisors, LLC ("TeleHill"); and (c) the data and inputs underlying the financial valuation

analyses, if any, that purport to support the fairness opinions created by TeleHill and provided to the Company and the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

5. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

6. Plaintiff is a citizen of Connecticut and is a BSquare stockholder.

7. Defendant BSquare develops and deploys technologies for the makers and operators of connected devices in North America, Europe, and Asia. The Company is incorporated under the laws of the State of Washington and has its principal place of business at PO Box 59478, Renton, WA 98058. BSquare shares trade on the NASDAQ exchange under the ticker symbol "BSQR".

8. Defendant Robert Chamberlain ("Chamberlain") has been a Director of the Company at all relevant times.

9. Defendant Mary Jesse ("Jesse") has been a Director of the Company at all relevant times.

10. Defendant Ryan Vardeman ("Vardeman") has been a Director of the Company at all relevant times. In addition Vardeman serves as the Chair of the Company Board.

11. Defendant Ralph C. Derrickson ("Derrickson") has been a director of the Company at all relevant times. In addition Derrickson serves as the Company's President and Chief Executive Officer ("CEO").

12. Defendant Bernee D.L. Strom ("Strom") has been a director of the Company at all relevant times

13. Defendant Richard A. Karp ("Karp") has been a director of the Company at all relevant times.

14. Defendants identified in ¶¶ 8-12 are collectively referred to as the "Individual Defendants."

15. Non-Party Parent is the American subsidiary of Kontron AG, a German-based multinational company that designs and manufactures embedded computer modules, boards and systems.

16. Non-Party Merger sub is a subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

18. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this

District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

20. BSquare develops and deploys technologies for the makers and operators of connected devices in North America, Europe, and Asia.

21. The Company operates through two segments, Partner Solutions and Edge to Cloud. The company offers software that connect devices to create intelligent systems; and embedded operating system software and services for makers of connected and intelligent devices, such as point-of-sale terminals, kiosks, tablets and handheld data collection devices, smart vending machines, ATMs, essential equipment in buildings and facilities environments, digital signs, and healthcare and entertainment devices.

22. The Company also resells Windows IoT, Windows Embedded, and Windows Server IoT software, as well as system utility software for Adobe and McAfee; and provides license compliance services, technical support, and manufacturing support. In addition, the company provides operating system configuration, fleet transition, 24/7 IoT operations, data engineering, and software utilities and professional services, as well as device management solutions.

27. The Company's recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid performance. For example, in the August 10, 2023 press release announcing its 2023 Q2 Financials, the Company noted such positive as an improvement of loss from operations of $0.5million year-on-year and an increase in gross profit over the previous quarter.

28. These positive clinical results are not an anomaly, but rather, are indicative of a trend of continued financial success by BSquare. Clearly, based upon these positive results and outlook, the Company is likely to have great future success.

23. Despite this upward trajectory and solid financial results, the Individual Defendants have caused BSquare to enter into the Proposed Transaction without providing requisite information to BSquare stockholders such as Plaintiff.

*The Flawed Sales Process*

24. As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible. Moreover, the Recommendation is materially deficient in the information it fails to provide.

25. The Recommendation Statement fails to disclose why the M&A Committee created to run the sales process was not composed solely of disinterested Directors, as Defendant and CEO Derrickson sat on said Committee.

26. Furthermore, the Recommendation Statement fails to disclose the specific powers of the M&A Committee.

27. In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Kontron, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.

28. The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into

between the Company and any potentially interested third parties, throughout the sales process, if any, would fall away.

29. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner

*The Proposed Transaction*

30. On October 11, 2023, 2023, BSquare and Kontron issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **Seattle, Washington and Linz, Austria—October 11, 2023:** Kontron America, Incorporated ("Kontron"), a global leader in IoT Technology, and Bsquare Corporation (Nasdaq: BSQR) ("Bsquare"), an expert in developing and deploying software technologies for the makers and operators of connected devices, today jointly announced the execution of a definitive merger agreement by which Kontron will acquire Bsquare. Under the terms of the agreement, Kontron will commence a tender offer for all outstanding shares of Bsquare for $1.90 per share of common stock in an all-cash transaction, representing an implied equity value of approximately $38 million.
>
> Commenting on the transaction, Hannes Niederhauser, Kontron CEO, said: "The acquisition of Bsquare is an important step to strengthen our software development, marketing, and integration in North America. We expect strong synergies in cross-selling with our San Diego-based subsidiary. The Bsquare SquareOne product will be a good extension to our susietec® software family."
>
> Ralph C. Derrickson, Bsquare's President and CEO added: "Bsquare's business will combine naturally with Kontron's IoT hardware products and services to create a more complete solution for our customers. The acquisition provides liquidity for Bsquare shareholders while providing scale and efficiency for the business."
>
> Transaction Details
>
> Under the terms of the merger agreement, which has been approved unanimously by the board of directors of both companies, a wholly-owned subsidiary of Kontron will commence a tender offer to acquire all outstanding shares of Bsquare for $1.90 per share of common stock in cash, for a total equity value of approximately $38 million. The offer price represents a 62% premium to the trailing 52-week volume weighted average of Bsquare's closing stock prices as of October 10, 2023.
>
> In connection with the execution of the merger agreement, certain of Bsquare's shareholders, as well as each director and executive officer, holding approximately

7

17% in the aggregate of Bsquare's outstanding shares, entered into an agreement on substantially similar terms in which they agreed to tender all of their Bsquare shares in the tender offer.

The closing of the transaction will be subject to customary conditions, including the expiration or termination of certain regulatory periods and the tender of at least two-thirds of Bsquare's outstanding common stock in the tender offer. Upon the successful completion of the tender offer, Kontron would acquire any untendered shares of Bsquare's common stock through a second-step merger effected for the same per common share consideration. The transaction is expected to close later in 2023.

After closing, Bsquare will become a privately held company, and shares of Bsquare common stock will no longer be listed on any public market.

Advisors

Barnes & Thornburg LLP serves as Kontron's legal advisor.

Telegraph Hill BD LLC, the broker-dealer subsidiary of Telegraph Hill Advisors, LLC, is acting as financial advisor to Bsquare. DLA Piper LLP (US) serves as Bsquare's legal advisor.

*Potential Conflicts of Interest*

31. The breakdown of the benefits of the deal indicates that BSquare insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of BSquare.

32. Company insiders currently own large, illiquid portions of Company stock which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Despite this the Recommendation Statement fails to give an accounting of these amounts, or the consideration for which they will be exchanged.

33. Company insiders also currently own large amounts of Company stock options, restricted shares, or other equity awards, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name of Executive Officer or Director | Number of Shares Subject to Vested In the Money Options (#) | Cash Consideration for Vested In the Money Options ($) | Number of Shares Subject to Unvested In the Money Options (#) | Cash Consideration for Unvested In the Money Options ($) |
|---|---|---|---|---|
| **Officers** | | | | |
| Ralph C. Derrickson (and director) | 0[(1)] | 0 | 0 | 0 |
| Cheryl A. Wynne | 31,875[(1)] | 14,981 | 13,125 | 6,169 |
| **Directors** | | | | |
| Ryan L. Vardeman | 0 | 0 | 0 | 0 |
| Robert S. Chamberlain | 0 | 0 | 0 | 0 |
| Bernee D.L. Strom | 12,500 | 6,250 | 12,500 | 6,250 |
| Mary Jesse | 0 | 0 | 0 | 0 |
| Richard Karp | 0 | 0 | 0 | 0 |

| Name of Executive Officer or Director | Number of Shares Subject to Company RSUs (#) | Cash Consideration for Company RSUs ($) | Number of Shares Subject to Company PSUs (#) | Cash Consideration for Company PSUs ($) | Aggregate Cash Consideration ($) |
|---|---|---|---|---|---|
| **Officers** | | | | | |
| Ralph C. Derrickson (and director) | 0 | 0 | 250,000[(1)] | 0[(1)] | 0 |
| Cheryl A. Wynne | 0 | 0 | 0 | 0 | 0 |
| **Directors** | | | | | |
| Ryan L.Vardeman | 17,307 | 0[(2)] | 0 | 0 | 0 |
| Robert S. Chamberlain | 11,538 | 0[(2)] | 0 | 0 | 0 |
| Bernee D.L. Strom | 11,538 | 0[(2)] | 0 | 0 | 0 |
| Mary Jesse | 11,538 | 0[(2)] | 0 | 0 | 0 |
| Richard Karp | 11,538 | 0[(2)] | 0 | 0 | 0 |

34. Moreover, certain Company insiders will be the beneficiaries of change-in-control employment agreements that will entitle such executives to significant amounts of money conditioned upon the consummation of the merger and/or their termination. These 'golden parachute' packages are significant and, grant each director or officer entitled to them significant sums of money, as follows:

**Golden Parachute Compensation**

| Name[1] | Cash ($) | Equity ($) | Perquisites/ Benefits ($)[5] | Total ($) |
|---|---|---|---|---|
| Ralph C. Derrickson[1] | 683,807[1] | 76,000[3] | 10,800 | 770,607 |
| Christopher Wheaton[2] | 150,000[2] | —[4] | 4,400 | 154,400[6] |

35. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36. Thus, while the Proposed Transaction is not in the best interests of BSquare, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Recommendation Statement*

37. On October 24, 2023, the BSquare Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information

and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38. Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

   a. Adequate disclosure regarding why the M&A Committee created to run the sales process was not composed solely of independent directors;

   b. Adequate disclosure of the powers of the M& Committee, including specifically if it was empowered to veto a potential transaction not in the best interest of common shareholders;

   c. Whether the terms of any confidentiality agreements entered during the sales process between BSquare on the one hand, and any other third party (including Kontron), if any, on the other hand, differed from one another, and if so, in what way;

   d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, if any, would fall away; and

   e. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction, which must be disclosed to stockholders

*Omissions and/or Material Misrepresentations Concerning BSquare's Financial Projections*

39. The Recommendation Statement fails to provide material information concerning financial projections for BSquare provided by BSquare management and relied upon by TeleHill in its analyses.

40. Notably, in its fairness opinion, TeleHill indicates that it reviewed, "Reviewed information furnished to TeleHill by BSQR's management, including certain internal financial analyses, budgets, reports and other information."

41. The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that BSqaure management provided to the Board and Telehill. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

42. With regard to the Management Projections, the Recommendation Statement fails to disclose material line items for important metrics as follows:

   a. Gross Profit % Margin, including all underlying inputs, assumptions, and metrics utilized to determine the same;

   b. Operating Loss % Margin, including all underlying inputs, assumptions, and metrics utilized to determine the same; and

   c. Net (Loss) Income, including all underlying inputs, assumptions, and metrics utilized to determine the same.

43. The Recommendation Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in all sets of provided projections

44. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

45. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of TeleHill's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by TeleHill*

46. In the Recommendation Statement, TeleHill describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

47. With respect to the *Comparable Public Companies Analysis*, the Recommendation Statement fails to disclose the following:

    a. The metrics for each comparable company observed;

  b. The specific inputs and assumptions used to determine the applied 25% discount rate as applied to the comparable EV/Rev multiples of the compared companies;

  c. The specific inputs and assumptions used to determine the applied 15% additional discount rate as applied to the comparable E/VRev multiples of the compared companies after the original 25% discount rate was applied;

  d. The specific inputs and assumptions used to calculate the TTM EV/Rev multiples range of 0.22x to 0.23x utilized.

  48. With respect to the *Selected Precedent Transaction Analysis*, the Recommendation Statement fails to disclose the following:

  a. The specific date on which each selected precedent transaction closed;

  b. The aggregate value of each selected precedent transaction;

  c. The specific inputs and assumptions used to calculate the TTM EV/Rev multiples range of 0.17x and 0.17x utilized.

  49. With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

  a. The Company's projected unlevered free cash flows for the calendar years ending December 31, 2023 through 2028, utilized, including the necessary sub metrics of

   i. earnings before interest;

   ii. taxes;

   iii. depreciation;

   iv. amortization;

    v.  capital expenditures;

    vi.  investment in working capital;

  b.  The terminal values for the Company calculated;

  c.  The inputs and assumptions underlying the discount rate 26.4%;

  d.  The company's risk-adjusted weighted after-tax cost of debt and equity capital associated with executing the Company's business plan, and the inputs and assumptions used to determine the same; and

  e.  The Company's current cash, cash equivalents and short-term investments.

50. With respect to the *Liquidation Analysis*, the Recommendation Statement fails to disclose the following:

  a.  Management's estimated liquidated value of assets;

  b.  Liabilities;

  c.  Administrative costs;

  d.  Employee severance;

  e.  Lease terminations;

  f.  Customer contractual obligations; and

  g.  The company's net operating losses.

51. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

52. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

# FIRST COUNT

## Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

53. Plaintiff repeats all previous allegations as if set forth in full herein.

54. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

55. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

56. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

57. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

58. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

59. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender

its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

60. Plaintiff has no adequate remedy at law.

## SECOND COUNT

## Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

61. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

62. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

63. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

64. SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

65. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

66. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

67. Plaintiff has no adequate remedy at law.

## THIRD COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

68. Plaintiff repeats all previous allegations as if set forth in full herein.

69. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

70. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

71. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of BSquare's business, the information contained in its filings with the SEC, and its

public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

72. The Individual Defendants acted as controlling persons of BSquare within the meaning of Section 20(a) of the Exchange Act. Because of their position with the Company, the Individual Defendants had the power and authority to cause BSquare to engage in the wrongful conduct complained of herein. The Individual Defendants controlled BSquare and all of its employees. As alleged above, BSquare is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 1, 2023

**BRODSKY & SMITH**

By: *Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*